# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CRIMINAL ACTION NO. 3:14-CR-111-GNS

**DEVIN THAUBERGER,**                                                    **Movant/Defendant.**

**v.**

**UNITED STATES OF AMERICA,**                                      **Respondent/Plaintiff,**

## REPORT AND RECOMMENDATION

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") filed by Movant/Defendant Devin Thauberger ("Thauberger").  (DN 85.)  This matter is referred to the undersigned for findings of fact and recommendations on any dispositive matter.  (DNs 87, 120.)  The United States filed a response in opposition.  (DN 90.)  On September 29, 2017, the Court entered an Order stating that it would hold an evidentiary hearing and appointing counsel to represent Thauberger pursuant to 18 U.S.C. § 3006A and Rule 8(c) of the Rules Governing § 2255 Cases.  (DN 95.)  Thauberger filed a pro se Motion to Supplement (DN 91) and his counsel filed a Motion to Amend the § 2255 Motion (DN 105), which the Court granted by separate order.  (DN 148.)  In compliance with the Court's April 19, 2018 Order (DN 111), prior to the evidentiary hearing, Thauberger's counsel filed a brief in support of Thauberger's § 2255 Motion (DN 112), to which the United States filed a response (DN 119.)  The undersigned conducted an evidentiary hearing on December 11, 2018.  (DN 130.)  In compliance with the post-hearing order, both Thauberger and the United States filed post-hearing briefs.  (DNs 135, 136.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned **RECOMMENDS** that Thauberger's § 2255 Motion (DN 85), as modified by subsequent filings, be **DENIED**.

I.   **FINDINGS OF FACT**

A.   **Factual and Procedural Background**

On February 23, 2016, Thauberger pleaded guilty to two counts of health care fraud, four counts of obstruction of criminal investigation, and one count of tampering with a witness pursuant to a plea agreement.  (DN 61, at PageID # 321; DN 59, at PageID # 306; DN 41.)  Thauberger was represented at the change of plea hearing by retained counsel, Michael A. Valenti ("Valenti").  (DN 80, at PageID # 440.)  At the hearing, Thauberger testified that he grew up in Canada and was a resident, but not a citizen, of the United States.  (DN 80, at PageID # 441-42.)  He likewise stated that he had had a sufficient amount of time to talk with Valenti about his case and his guilty plea and that he was satisfied with the advice that Valenti had given him so far.  (*Id.* at 442-43.)  While the Court did not specifically inquire as to whether Thauberger had been advised of any immigration consequences of his plea during the plea colloquy, Thauberger testified that he had read and the understood the plea agreement.  (*Id.* at 449-50.)  Paragraph 5 of the plea agreement provided as follows:

> 5.   Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which Defendant is pleading guilty.  Because removal and other immigration consequences are handled in separate proceedings, Defendant understands that no one, including his attorney or the U.S. District Court, can predict with certainty how his conviction may affect his immigration status. Defendant agrees to plead guilty with a full understanding that this guilty plea may lead to adverse immigration consequences, including possible automatic removal from the United States.

(DN 59, at PageID # 308-09.)  The plea agreement further provided in Paragraph 11 that "at the time of sentencing, the United States "w[ould] . . . [s]tipulate and agree that the amount of loss involved in this case is $214,672.11 which is to be paid by the date of sentencing."  (*Id.* at 312.)  At the end of the plea agreement, the same provided, "I have read this Agreement and carefully

2

reviewed every part of it with my attorney.  I fully understand it and I voluntarily agree to it." (*Id.* at 318-19.)  Defendant signed the plea agreement under that statement.[1] (*Id.*)

Prior to sentencing, U.S. Probation prepared a Presentence Investigation Report ("PSR"). The final PSR provided that the total amount of the loss to be used for guideline calculation purposes was $214,672.11 and that the Parties had agreed to this amount.  (DN 72, at PageID # 390.)  In calculating the base offense level for Thauberger's health care fraud and obstruction of justice charges, his base offense level was increased by ten levels because the loss exceeded $150,000 but was less than $250,000.  (*Id.* at 392.)  Valenti did not object to this provision of the PSR.  He only objected to other provisions of the PSR regarding Thauberger's financial condition. (DN 72-1, at PageID # 401-02.)

At Thauberger's sentencing, Valenti affirmed that both he and Thauberger had been provided with a copy of the PSR and that they had reviewed the same.  (DN 81, at PageID # 479.) Valenti then stated that his only objection to the PSR was regarding its representation of Thauberger's financial condition.  (*Id.*)  The District Judge sentenced Thauberger to forty one months imprisonment, and a judgment reflecting this sentence was entered on June 13, 2016.  (*Id.* at 490; DN 77.)

On June 5, 2017, Thauberger filed a § 2255 Motion requesting that the Court vacate his sentence for various reasons including that his trial counsel had never informed him that he would be deported and that errors in the PSR regarding the intended loss negatively impacted the sentence he received.  (DN 85, at PageID # 524-25; DN 85-1, at PageID # 573.)  On August 18, 2017, the

---

[1] As referenced at the change of plea hearing, though Thauberger initially signed the plea agreement on February 2, 2016, he re-signed a new signature page on February 18, 2016 after a change was made to the agreement regarding its redaction of the maximum possible fine.  (DN 59, at PageID # 318-19; DN 80, at PageID # 447-48, 457-58.)

United States filed a response to which it attached an Affidavit from Thauberger's trial counsel, Valenti.  (DNs 90, 90-2.)  Valenti's Affidavit provided in relevant part:

> 16.    Prior to entry of the guilty plea, I met with Devin Thauberger.  We discussed the Plea Agreement, including Paragraph 5, which indicated that by pleading guilty, there may be removal or other immigration consequences as a result of this plea.

(DN 90-2, at PageID # 593.)   After reviewing Thauberger's Motion (DN 85) and the United States's response (DN 90), the Court concluded that Thauberger was entitled to an evidentiary hearing and appointed counsel to represent him (DN 95).[2]

Prior to the evidentiary hearing, Thauberger's counsel submitted a brief in support of Thauberger's § 2255 Motion to which he attached a declaration from Valenti.  (DNs 112, 112-2.) In pertinent part, Valenti's Declaration provided as follows:

> 6.    Prior to and during plea negotiations, Dr. Thauberger asked me if a guilty plea would influence his immigration status;

> 7.    I explained to him that the charges were serious and that it could be problematic;

> 8.    However, I did not give [Thauberger] any specific advice concerning his immigration status, as I was not retained to provide legal services to Dr. Thauberger on immigration law matters;

> 9.    I encouraged Dr. Thauberger to consult an immigration law attorney on all matters relating to his immigration status;

> 10.    Dr. Thauberger requested that I have contact with an immigration attorney that he had used in the past;

> 11.    In my contact with the immigration attorney, I was informed that: the charges were serious and that they could have an effect on Dr. Thauberger's immigration status.  I passed this information on to Dr. Thauberger;

> 12.    Again, I never gave Dr. Thauberger any specific advice concerning his immigration status.

---

[2] The Court appointed the Federal Defender to represent Thauberger.  (DN 95.)  However, the Court subsequently relieved appointed counsel of his responsibilities after Thauberger retained an attorney to represent him.  (DNs 109, 110, 111.)

(DN 112-2, at PageID # 674-75.)  The United States also filed a response to Thauberger's brief.
(DN 119.)  The undersigned then conducted an evidentiary hearing on December 11, 2018.  (DNs
130, 132.)

### B.    Findings of Fact from Evidentiary Hearing

At the December 11, 2018 evidentiary hearing, the undersigned heard testimony from
Thauberger and Valenti.[3]

### 1.    Thauberger's Testimony

Thauberger testified that he was a lawful permanent resident of the United States and that
he had been in the United States for the past twenty-four years.  (DN 132, at PageID # 724.)  He
has a doctorate degree and can read, write, and understand English.  (*Id.* at 743.)  He testified that
he met with both Valenti and his former attorney Steve Pence ("Pence") to go over his plea
agreement.  (*Id.* at 731-32.)  However, he stated that he never got an opportunity to read the plea
agreement and that Valenti read it to him.  (*Id.* at 729, 746, 749, 778.)  He testified that Valenti
was "flying through" the plea agreement and that it did not even seem like Valenti was hitting all
the words in the paragraphs, simply mentioning a bit of each paragraph.  (*Id.* at 728-29, 762-63.)
He said that what Valenti was reading from had "draft" on it and that Valenti was reading very
fast.  (*Id.* at 746.)   While Valenti was reading, the words "removal and other immigration
consequences" caught his attention, and he asked Valenti to stop and explain.  (*Id.* at 729, 751.)
He said that it was the "first and only time it ever came up at that point."  (*Id.* at 729.)  He stated
that when he pressed Valenti, Valenti explained that it was only a formality and that he had
discussed the issue with the U.S. Attorney's Office, which was not moving for deportation.  (*Id.*

---

[3] The undersigned will refer to the transcript of the December 11, 2018 evidentiary hearing (DN 132) by reference to
the PageID#s found in the header placed on the transcript by the Clerk at the time of filing, not the internal page
numbers of the transcript itself.

at 729-30, 776.)  He said Valenti led him to believe the Assistant United States Attorneys in his case made the decision about deportation.  (*Id.* at 729, 776.)  He then testified that when he pressed the issue, Valenti told him he was "overreacting" and was dismissive of his concerns.  (*Id.* at 731, 776.)  He indicated that Pence even said that he had "never seen a white collar Canadian get deported."  (*Id.* at 731-32.)

After that conversation, Thauberger testified that he tried to get Valenti to contact an immigration attorney to see how the charges would effect Thauberger's status.  (*Id.* at 730.)  He asked Valenti to contact Andrew Cumming, the attorney who did Thauberger's green card.  (*Id.* at 780-81.)  However, as far as Thauberger knew, Valenti never spoke to Cumming.  (*Id.* at 730.)  On cross-examination, the United States showed Thauberger an e-mail chain between Valenti and Cumming.  On August 12, 2015, Valenti e-mailed Cumming stating that he did so at Thauberger's request and attaching a copy of the Indictment and Superseding Indictment in this matter.  (DN 134, at Gov'ts Ex. 2.)  He then asked Cumming to contact him after Cumming had an opportunity to review the attachments.  (*Id.*)  Cumming wrote back the next day stating in relevant part:

> Great. Thanks for this. Nice to meet you.  What normally happens is we advise on the immigration consequences of any planned plea agreement – to determine if it will result in the loss of the Green Card.  This area of the law is complicated, and these charges look serious (problematic).  Sometimes the immigration consequences can be used as leverage to get a plea agreement that does not result in the loss of the Green Card (and deportation).  Note – if Devin is going to do serious time – he may want to get deported and serve that time in Canada to reduce the time served.

(*Id.*)  Cumming copied a "dthauberger@gmail.com" on the e-mail and stated at the end, "Devin – I will send you a separate note on a retainer etc."  (*Id.*)  While Thauberger testified that he had never seen the e-mail exchange before the day of the hearing, he admitted that his e-mail address was correct but stated that he kept a block on his e-mails so only e-mails from specific people

came through.  (DN 132, at PageID # 781, 783.)  He testified, "I probably would have never gotten this probably."  (*Id.*)

When asked by the United States on cross-examination whether he told the District Judge at his change of plea hearing that he read the plea agreement, Thauberger was evasive.  He first testified, "I don't believe so no."  (*Id.* at 747.)  After counsel for the United States showed him a copy of the transcript from the hearing, he testified, "I mean, that's what the stenographer put, but I also know that I never read it.  My attorney read it to me."  (*Id.* at 748.)  In response to another question from the United States about whether Thauberger told the District Judge that he read the plea agreement, Thauberger said, "Well, he read it to me, so it was kind of hard to answer the question but, yeah."  (*Id.* at 754.)  He maintained that he never saw the plea agreement, only a draft version of it.  (*Id.* at 767.)

When asked by his attorney if he would have accepted the plea offer had he known he faced mandatory deportation, Thauberger testified he would not have.  (*Id.* at 736-37.)  He said that initially he would have tried to work something out with the government and then gone to trial if that did not work out.  (*Id.*)  He stated unless he could work something out with the government, "the only other resort you have is to go to trial, just to try and protect your status in America."  (*Id.* at 737.)

Regarding the amount of the loss, he testified that when billing an insurance company for services rendered to a client, he knew he would typically receive about 40-70% of the bill.  (*Id.* at 738.)  He indicated he had fee schedules with the insurance companies so he knew based on what he billed what he would be paid.  (*Id.* at 770.)  Therefore, he would send out the same charge to all carriers even though he would know exactly what he was getting back from each.  (*Id.* at 772-

73.)  He testified that if he was paid more than the fee schedule, he would send it back.  (*Id.* at 773.)

### 2.      Valenti's Testimony

Valenti testified that he is a practicing attorney with over thirty-two years of experience in business law litigation, securities litigation, and some criminal, white collar criminal litigation.  (*Id.* at 786.)  He indicated he does not "regularly practice in the immigration arena."  (*Id.* at 801.)  He said that he had several conversations with Thauberger about the potential effect of any plea on Thauberger's immigration status and that Thauberger expressed concern about that issue.  (*Id.* at 789.)  He asked Thauberger if Thauberger had an immigration attorney representing him, and Thauberger provided him with contact information for Andrew Cumming.  (*Id.*)  Valenti testified that in August 2015, he e-mailed Cumming, and Cumming responded, copying Thauberger.  (*Id.* at 789-90.)  He also had one phone call with Cumming.  (*Id.*)  He testified that Cumming said Thauberger's charges were "very serious" and "would possibly subject Thauberger to deportation and the loss of his green card."  (*Id.* at 789-90.)  He said after he relayed that information to Thauberger, Thauberger told him he was being advised by Cumming with respect to his immigration status from that point forward.  (*Id.* at 790.)  He indicated the he did not regularly practice in the area of immigration, and therefore, he advised Thauberger to consult with someone who did.  (*Id.* at 801-02.)  He testified, consistent with the affidavit he provided to Thauberger's counsel, that he never advised Thauberger deportation was mandatory, simply that the charges were problematic and there was a risk Thauberger could be deported.  (*Id.* at 802-03, 810, 812-13.)

He also testified that when he received the final plea agreement in this matter, he met and discussed the same with Thauberger at length.  (*Id.* at 794.)  He said he and Thauberger's former

attorney, Pence, drove to the Marion County Detention Center to see Thauberger and that they met with him for a long time.  (*Id.* at 794-95.)  Valenti stated his practice would have been to have more than one copy of the plea agreement for the group to go over, though he was not "100 percent positive" he did so in this instance  (*Id.* at 795, 806.)  He testified that he, Pence, and Thauberger read the agreement together, which took a considerable amount of time and they discussed any questions Thauberger had.  (*Id.*)  He specifically testified that he and Pence discussed Paragraph 5 of the plea agreement regarding immigration consequences with Thauberger and that Thauberger referenced discussions he had had with Cumming during that conversation. (*Id.* at 788-89, 795-96.)  Valenti specifically testified that he recalled Thauberger saying he had been advised by Cumming that these charges "could result in deportation."  (*Id.* at 796.)  He indicated that he and Pence both indicated that Thauberger did not have to enter a plea and could go to trial but that Thauberger expressed concern, based on advice from Cumming, that the aggravated identity theft charges would put his immigration status in "further jeopardy."  (*Id.* at 796-97, 816.)  He testified that "[t]here was no doubt in [his] mind that Dr. Thauberger understood that this plea could have serious consequences, up to and including deportation."  (*Id.* at 814.)

He also indicated that while he discussed the amount of the loss with Thauberger, Thauberger did not raise any issue with him regarding the amount of the loss.  (*Id.* at 798-99.)  He also stated that while Thauberger's parents did eventually raise Thauberger's concerns regarding the amount of the loss in the PSR with Valenti, it may have been after sentencing.  (*Id.*)  Further, he testified that he did not prevent Thauberger from raising any issues during the sentencing hearing and did not tell him he couldn't speak to the Judge.  (*Id.* at 799-800.)

## II.    CONCLUSIONS OF LAW

### A.    Legal Standard

#### 1.    Standard of Review for § 2255 Motion

A federal prisoner seeking relief under 28 U.S.C. § 2255 "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  To prevail on a § 2255 motion alleging constitutional error, the movant must show that the error had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009).  The movant must sustain his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

#### 2.    Standard for Ineffective Assistance of Counsel Claim

Claims of ineffective assistance of counsel are properly brought in a § 2255 Motion.  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).  The Sixth Amendment entitles a defendant not only to counsel but to counsel that is reasonably effective. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A claim of ineffective assistance of counsel requires the defendant to show that (1) counsel's performance was deficient and (2) that the deficiency prejudiced him.  *Id.* Conclusory allegations or bare bones statements regarding counsel's effectiveness fall short of meeting that burden.  *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that "conclusory statement" by petitioner was "wholly insufficient to raise the issue of ineffective assistance of counsel").

10

To satisfy the first prong of the *Strickland* test, the defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if it fell below an "objective standard of reasonableness" based on "prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance must, consequently, "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 688. The Court is required to evaluate the objective reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all of the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *see id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

Under the second *Strickland* prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Where a defendant has entered a guilty plea, the "prejudice" prong focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In this context, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*;

*see also Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir. 1992) ("Prejudice is proved if the defendant shows a reasonable probability that, but for counsel's defective advice, he would not have pleaded guilty.").

### B.     Thauberger's Grounds for Relief

Thauberger initially moved to vacate or set aside his sentence on five grounds.  (DN 85.) His appointed counsel had filed a motion to amend his § 2255 Motion to request that Thauberger's "guilty plea, sentence, and conviction" be set aside (DN 105), which the Court recently granted (DN 148).  His newly-retained counsel then filed a memorandum in support of Thauberger's § 2255 Motion in preparation for the evidentiary hearing that asserted only two grounds for relief: (1) that Valenti's failure to advise Thauberger regarding mandatory deportation was ineffective assistance of counsel; and (2) that Valenti's failure to object to the USA's intended loss calculation was ineffective assistance of counsel.  (DN 112, at PageID # 655.)

### 1.     Failure to Advise Regarding Mandatory Deportation

Thauberger argued that Valenti provided ineffective assistance of counsel because he failed to advise Thauberger that Thauberger was subject to mandatory deportation if he pleaded guilty to health care fraud.  (DN 112, at PageID # 655; DN 135, at PageID # 837-38.)  As with all ineffective assistance of counsel claims, to prevail, Thauberger must demonstrate both that Valenti's performance was deficient and that Thauberger suffered prejudice as a result.  *Strickland*, 466 U.S. at 687.  This inquiry likewise applies to a defendant's claim that his attorney failed to advise him of the potential immigration consequences of a plea.  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) ("[A]dvice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel.  *Strickland* applies to [defendant]'s claim.").

In *Padilla*, the Supreme Court held that giving a client false advice or no advice at all about a plea agreement's immigration consequences constitutes deficient performance under *Strickland*. *Id.* at 368 (finding deficient performance where counsel "provided false assurance that his conviction would not result in his removal . . . ."); *see also Lee v. United States*, 137 S. Ct. 1958, 1962, 1964 (2017) (noting that government conceded defendant received deficient representation where attorney falsely told him he would not be deported).  Exactly what amounts to sufficient counsel depends upon the complexity of the pertinent immigration laws:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Padilla*, 559 U.S. at 369.  The Court then further explained in a footnote that while "deportation consequences are often unclear[,] [l]ack of clarity in the law . . . does not obviate the need for counsel to say something about the possibility of deportation, even though it will affect the scope and nature of counsel's advice."  *Id.* at 369 n.10.  For example, Padilla's plea to a drug offense subjected him to mandatory deportation under 8 U.S.C. § 1227(a)(2)(B)(i), and the Supreme Court held the consequences were clear from the statute.  8 U.S.C. § 1227(a)(2)(B)(i) (2017) ("Any alien who at any time after admission has been convicted of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is deportable.").

Both Thauberger and the United States agreed that the immigration consequences of Thauberger's plea were clear, succinct, and straightforward.  (DN 135, at PageID # 837-38; DN 136, at PageID # 849 ("Here, the immigration consequences facing Thauberger are "succinct and straightforward.").)  Thauberger pleaded guilty to two counts of health care fraud for which he

paid restitution of approximately $96,000.  (DN 81, at PageID # 481; DN 61, at PageID # 321; DN 59, at PageID # 306; DN 41.)  Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  The Immigration and Naturalization Act defines an "aggravated felony" in relevant part as "an offense that . . . involves fraud or deceit in which the loss to the victim exceeds $10,000 . . . ."  8 U.S.C. § 1101(a)(43)(M)(i) (2017).  Accordingly, the undersigned finds that it was clear from the pertinent immigration laws that Thauberger could be deported as a consequence of his guilty plea.

As the consequences of Thauberger's plea were clear, *Padilla* imposed a duty upon Valenti to give "correct advice" to Thauberger.  *Padilla*, 559 U.S. at 369.  The United States argued that Valenti satisfied this duty by providing Thaubeger with notice that he could be deported.  (DN 136, at PageID # 848-50.)  Conversely, Thauberger argued that his counsel failed to inform him of the "specific consequences" of his plea by failing to inform him that he faced *mandatory* deportation.  (DN 135, at PageID # 837-38.)  Here, Thauberger was advised by Valenti that his charges were serious, problematic, and could have an effect on his immigration status, *including deportation* and loss of his green card.  (DN 112-2, at PageID # 674-75; DN 132, at PageID # 789-90, 802-03, 810, 812-13.)  Valenti admitted that he did not tell Thauberger that deportation was mandatory and that Thauberger *would be* deported.  (DN 132, at PageID # 802-03, 810, 812-13.)  Instead, Valenti encouraged Thauberger to consult an immigration attorney and even contacted via e-mail Cumming, the attorney who had assisted  Thauberger in obtaining his green card, at Thauberger's request.  (DN 134, at Gov'ts Ex. 2; DN 132, at PageID # 789-90, 801-02.)  Cumming responded, copying Thauberger, to affirm that "[t]his area of the law is complicated" and that Thauberger's charges looked "serious" and "problematic."  (DN 134, at Gov't Ex. 2; DN 132, at

14

PageID # 789-90, 801-02.)   Cumming then indicated his intention to separately reach out to Thauberger regarding a retainer to consult on the immigration consequences of any planned plea agreement." (DN 134, at Gov't's Ex. 2.)  Further, Valenti testified that during his discussions with Thauberger about the final plea agreement, it was evident that Thauberger had been in contact with Cumming and had been advised by him that these charges could result in his deportation.  (DN 132, at PageID # 795-97.)  Indeed, Valenti testified that at that time he reminded Thauberger that Thauberger did not have to accept a plea given the potential immigration consequences, but Thauberger expressed concerns that a conviction for aggravated identity theft if he went to trial would cause further immigration problems given advice Thauberger had received from Cumming. (*Id.* at 796-97.)

In making these factual findings, the undersigned credits Valenti's testimony.  The undersigned recognizes that Valenti provided an affidavit to Thauberger indicating that he gave "no specific advice" concerning Thauberger's immigration status.  (DN 112-2, at PageID # 674.) However, the undersigned notes that Valenti testified that he did not draft the affidavit and that what he meant by having provided "no specific advice" was that he did not tell Thauberger that Thauberger was "guaranteed of being deported" or "guaranteed of not being deported, just that these [we]re serious charges and could very well affect [Thauberger's] status."  (DN 132, at PageID # 801-802, 812-13.)  Further, in having considered the testimony offered by both Valenti and Thauberger on this issue, as well as each Party's post-hearing briefing, the undersigned does not credit Thauberger's testimony that (1) Valenti told him Paragraph 5 of the Plea Agreement was only a formality; (2) Valenti told him he was overreacting; (3) Valenti led him to believe the Assistant United States Attorneys in his case would decide whether he was deported; and (4) Valenti never spoke to Cumming.  The following factors are relevant to that conclusion:

1.      The e-mail provided by the United States demonstrating Valenti did reach out to Cumming.  (DN 134, at Gov't's Ex. 2.)

2.      Valenti's credible testimony regarding Thauberger's accounts of his conversations with Cumming and advice Cumming gave him. (DN 132, at PageID # 795-97.)

3.      Paragraph 5 of the Plea Agreement, which Thauberger testified to the District Judge at the change of plea hearing that he reviewed, expressly indicated that removal and other immigration consequences were handled in separate proceedings.  (DN 80, at PageID # 449-50.)

4.      When reading Paragraph 5 of the Plea Agreement aloud at the request of counsel for the United States at the evidentiary hearing, Thauberger hesitated to read the portion of the paragraph stating that "Defendant agrees to plead guilty with the full understanding this plea may lead to adverse immigration consequences . . . ."  Additionally, he refrained from reading the final lines of that Paragraph and had to be prompted by counsel to add "including possible removal from the United States."  (DN 132, at PageID # 750-51.)

5.      Thauberger's reluctance to admit during the evidentiary hearing that he told the District Judge that he read the plea agreement, even in the face of a certified transcript by a stenographer.[4]  (DN 132, at PageID # 747-48, 754.)

6.      Thauberger did not raise any concerns regarding Paragraph 5 of the Plea Agreement with the District Court at his change of plea and in fact testified that he had sufficient time to consult with Valenti about his plea and was satisfied with Valenti's advice.[5]  (DN 80, at PageID # 442-43.)

7.      Valenti's credible testimony regarding the advice he provided to Thauberger with respect to his immigration status and with respect to the prudence of consulting an immigration attorney.

Accordingly, the undersigned finds that even if he did not use the words "mandatory deportation,"

at no time did Valenti provide incorrect advice regarding the immigration consequences

Thauberger faced.   Further, the undersigned was presented with no authority compelling a

---

[4] When showed the transcript, Thauberger evasively testified, "I mean, that's what the stenographer put," implying that the stenographer's transcript was incorrect without explicitly disagreeing that he told the District Judge he read the plea agreement.  (DN 132, at PageID # 748.)
[5] This fact and Valenti's credible testimony regarding their discussion of the final plea agreement also tend to contradict Thauberger's testimony regarding Valenti speeding through the plea and not providing Thauberger sufficient counsel.  Here again, the undersigned finds the former more credible.

conclusion that it was deficient performance for Valenti to encourage his client to consult with another attorney experienced in a complex field of immigration law and to permit his client to rely on that experienced attorney's advice. Because Valenti did not provide incorrect advice, did advise Thauberger that he could potentially be deported/removed from the United States, did advise Thauberger to contact an immigration attorney, and was told by Thauberger that Thauberger did in fact consult an immigration attorney who told him he could be deported, the undersigned finds Valenti's performance was not deficient within the meaning of *Strickland* or *Padilla*.

In addition to failing to demonstrate deficient performance, the undersigned also finds that Thauberger has failed to demonstrate prejudice. To demonstrate prejudice, Thauberger must show that "there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee .v United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59.). As the Sixth Circuit recently explained, a movant can also demonstrate prejudice where he claims he was not advised of the proper immigration consequences of his plea by showing that "had he known about the risk of adverse immigration consequences, he would have bargained for a more favorable plea." *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018). Here, Thauberger did testify at the evidentiary hearing that had he been properly advised of the immigration consequences of his plea, he would have insisted on either negotiating a different plea agreement with the United States or going to trial to protect his status. (DN 132, at PageID # 736-37.) However, the United States Supreme Court cautioned in *Lee* that in determining prejudice where a defendant has entered a guilty plea, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

During the plea colloquy, Thauberger testified that he had sufficient time to consult with his attorney about the plea and was satisfied with Valenti's advice.  (DN 80, at PageID # 442-43.) He also testified that he had read the plea agreement and the plea agreement specifically indicated there was a possibility of immigration consequences up to and including "automatic removal." (DN 80, at PageID # 449-50; DN 59, at PageID # 308-09.)  While Thauberger testified at the evidentiary hearing that he never read the plea agreement and that his attorney merely read it to him, the undersigned finds this statement not credible in light of Valenti's description of their lengthy discussion of the plea agreement.  Further, as the undersigned already found credible above, Valenti testified to expressly discussing the immigration consequences of the plea in that there was a possibility Thauberger could be deported and the advice Thauberger had received from immigration attorney Cumming in relation to the plea agreement that he could be deported as a result of the same.  Yet Thauberger, in the face of correct advice from two different attorneys, chose to enter into a guilty plea.  Accordingly, the undersigned finds that Thauberger has failed to demonstrate prejudice under *Hill*, *Lee*, *Rodriguez-Penton*, and *Strickland*.

Accordingly, the undersigned recommends Thauberger's § 2255 Motion be denied with respect to his ineffective of assistance of counsel claim that Valenti failed to inform him of the immigration consequences of his plea.

### 2.     Failure to Object to Intended Loss Calculation

Thauberger also argued that Valenti provided ineffective assistance of counsel in failing to object to the United States's intended loss calculation.  (DN 112, at PageID # 655.)  Specifically, Thauberger argued that while the United States used the face value of fraudulent invoices submitted to calculate the loss, the amount was artificially inflated because Thauberger never received the total invoice amount.  (*Id.* at 664.)  Instead, he argued that he only ever received the

amount listed on a fee schedule with each insurance company in response to an invoice, which was somewhere between 40% and 70% less than the total amount of the invoice.  (*Id.* at 664; DN 132, at PageID# 738, 770, 772.)  As previously explained, to demonstrate ineffective assistance of counsel, Thauberger must prove both deficient performance and prejudice.  *Strickland*, 466 U.S. at 687.

U.S.S.G. § 2B1.1(b)(1)(F) addresses offenses of fraud or deceit and provides regarding "special offense characteristics" that if the amount of the loss was more than $150,000 but less than $250,000, the defendant's base offense level should be increased by ten.  U.S.S.G. § 2B1.1(b)(1)(F) (2015).  Comment 3(A) to this guideline provides that "loss" for purposes of subsection (b)(1) is defined as "the *greater* of actual loss or intended loss."  *Id.* at cmt. 3(A) (emphasis added).  Actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."  *Id.* at cmt. 3(A)(i).  Intended loss is defined as "the pecuniary harm that the defendant purposely sought to inflict" and it "includes intended pecuniary harm that would have been impossible or unlikely to occur."  *Id.* at cmt. 3(A)(ii).  Comment 3(F)(viii) to the guideline then provides that

> in a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, *i.e.*, is evidence sufficient to establish the amount of the intended loss, if not rebutted.

*Id.* at cmt. 3(F)(viii).

Here, Thauberger's base offense level in the PSR was increased ten levels based on the amount of the loss. (DN 72, at PageID # 392.)  As noted in the PSR, the total intended loss to the insurance companies in this matter was $214,672.11, which is more than $150,000 but less than $250,000.  (*Id.* at 390.)  The PSR stated that the amount of the loss had been agreed to by the

Parties.  (*Id.*)  Thauberger argued, citing Comment 3(F)(viii), that it was deficient performance for

Valenti to fail to object to or attempt to rebut this amount and to the United States's use of the face

value of the invoices as the intended loss when Thauberger had explained to him how he was paid

by a fee schedule.  (DN 112, at PageID # 664.)  However, Thauberger's argument misconstrues

the relevant provisions of the Sentencing Guidelines.  The existence of the fee schedule goes to

the amount of the actual loss, meaning the amount that Thauberger "knew or, under the

circumstances, reasonably should have known, was a potential result of the offense."  U.S.S.G. §

2B1.1 cmt. 3(A)(i), (iv).  Whereas the invoice amount parallels the intended loss because the same

encapsulates the harm sought to be inflicted even if that harm "*would have been impossible or

unlikely to occur*" because the insurance companies Thauberger invoiced would not pay more than

an agreed upon fee for service rendered.  *See id.* at 3(A)(ii).  It is well-established that counsel has

no duty to assert a legally baseless claim, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and

cannot be ineffective when he does not raise such a claim.  *Greer v. Mitchell*, 264 F.3d 663, 676

(6th Cir. 2001).  Because Thauberger has not demonstrated the objections he wanted his counsel

to raise have merit, the undersigned finds Valenti was likewise not ineffective for failing to raise

them.  Further, the undersigned finds that even if there was merit to Thauberger's argument,

Thauberger has not overcome the strong presumption that Valenti's representation was within the

range of reasonable professional assistance and that his failure to object constituted sound strategy.

*Strickland*, 466 U.S. at 689.

Because Thauberger has not demonstrated Valenti performed deficiently, the undersigned

need not address, and declines to address, whether Thauberger suffered prejudice as a result.  *See

Sowell v. Bradshaw*, 372 F.3d 821, 838 (6th Cir. 2004) ("The Court is not required to address both

components of *Strickland* if one component fails.").  Accordingly, the undersigned recommends

Thauberger's § 2255 Motion be denied with respect to his ineffective of assistance of counsel claim that Valenti failed to object to the United States's intended loss calculation.

### C.    Certificate of Appealability

The final issue is whether Thauberger is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the claims raised in his motion.  An appeal from a denial of a § 2255 motion may not proceed unless a judge issues a COA for the claim.  28 U.S.C. § 2253(c)(1)(B) (2017).  To obtain a COA when the Court rejects a defendant's claim on the merits, the defendant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The defendant need not demonstrate the claim will prevail on the merits; he or she need only demonstrate that the issues he or she seeks to appeal are deserving of further proceedings or debatable among jurists of reason.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)); *Slack*, 529 U.S. at 483-84.

As to Thauberger's claim regarding the potential immigration consequences of his plea, the undersigned found that Thauberger had not been given incorrect advice, had been warned he could be deported, had been advised to contact an immigration attorney, had contacted an immigration law attorney, and had been advised by that immigration law attorney that entering a plea could subject him to deportation.  Based on these facts, the undersigned finds that reasonable jurists would not find the undersigned's assessment of Thauberger's ineffective assistance of counsel claim debatable or wrong.  Therefore, the undersigned recommends that a COA be denied as to Thauberger's first ineffective assistance claim.

As to Thauberger's claim regarding Valenti's failure to object to the intended loss calculation used in calculating Thauberger's sentence, the undersigned found both that the

objections Thauberger wanted his counsel to raise were without merit and that Thauberger had not overcome the presumption that counsel's omission constituted sound strategy. Based on these findings, the undersigned likewise concludes that reasonable jurists would not find this assessment of Thauberger's claim debatable or wrong. Therefore, the undersigned recommends a COA be denied as to Thauberger's second claim.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Thauberger's § 2255 Motion (DN 85) be **DENIED**. The undersigned also recommends that a Certificate of Appealability be **DENIED** as to all claims therein advanced.

September 4, 2019

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).