UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:14-CR-00111-GNS-CHL
CIVIL ACTION NO. 3:17-CV-00343-GNS

DEVIN THAUBERGER                                                  MOVANT/DEFENDANT

v.

UNITED STATES OF AMERICA                            RESPONDENT/PLAINTIFF

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Objections (DN 153, 155, 156, 157, 158)[1] to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R&R") (DN 149) on Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (DN 85). For the following reasons, the Court **OVERRULES** the objections, **ADOPTS** the R&R, and **DENIES** Defendant's motion.

I.     **BACKGROUND**

On February 23, 2016, Defendant Devin Thauberger ("Thauberger") pleaded guilty to two counts of health care fraud and four counts of obstruction of criminal investigation. (R&R 2; Order 1, DN 61). Thauberger was represented at the plea hearing by retained counsel, Michael A. Valenti ("Valenti"). (Plea Hr'g Tr. 2:9-11, DN 80). At the hearing, Thauberger testified that he grew up

---

[1] While one document (DN 155) was filed by counsel, the Court construes Defendant's numerous *pro se* filings as attempts to object to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation. Additionally, Thauberger's filings could be stricken since he is represented by counsel who, subsequent to all of Thauberger's filings, filed an objection. *See United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987) ("[T]he question whether to allow a defendant to participate in his own defense along with counsel in 'hybrid representation' is a matter committed to the sound discretion of the trial court.") (citations omitted). Because of Thauberger's communication issues with his counsel, however, which prompted his *pro se* filing that were mailed before counsel's objection was filed, Thauberger's objections to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation shall be considered.

in Canada and was a resident, but not a citizen, of the United States. (Hr'g Tr. 3:24-4:4). He likewise stated that he had had a sufficient amount of time to talk with Valenti about his case and his guilty plea and that he was satisfied with the advice that Valenti had given him. (Hr'g Tr. 4:25-5:8). While the Court did not specifically inquire as to whether Thauberger had been advised of any immigration consequences of his plea during the plea colloquy, Thauberger testified that he had read and understood the plea agreement, which stated the following in relevant part:

> Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which Defendant is pleading guilty. Because removal and other immigration consequences are handled in separate proceedings, Defendant understands that no one, including his attorney or the U.S. District Court, can predict with certainty how his conviction may affect his immigration status. Defendant agrees to plead guilty with a full understanding that this guilty plea may lead to adverse immigration consequences, including possible automatic removal from the United States.

(Plea Agreement ¶ 5, DN 59; Hr'g Tr. 11:25-12:21). Thauberger signed the plea agreement, which additionally provided, "I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (Plea Agreement 14).

Prior to sentencing, U.S. Probation prepared a Presentence Investigation Report ("PSR"). (R&R 3). The final PSR provided that the total amount of the loss to be used for guideline calculation purposes was $214,672.11 and that the parties agreed to this amount. Per application of the United States Sentencing Guidelines, this loss amount, coupled with his health care fraud charges, increased Thauberger's base offense level by ten. Valenti did not object to this provision of the PSR, only objecting to other provisions regarding Thauberger's financial condition.

The Court sentenced Thauberger to 41 months' imprisonment by judgment entered on June 13, 2016. (Sentencing Hr'g Tr. 13:18-25, DN 81). On June 5, 2017, Thauberger filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate his sentence on the basis of ineffective assistance

of counsel. (Mot. Vacate 5-7, DN 85). The Magistrate Judge recommended denial of Thauberger's motion and of a certificate of appealability. (R&R 22). Thauberger makes three objections to this court: (1) his counsel rendered ineffective assistance by not informing him of the severity of the immigration consequences stemming from his guilty plea; (2) counsel rendered ineffective assistance by failing to object to the use of the $214,672.11 figure in calculating his base offense level; and (3) a certificate of appealability should be granted.

## II. STANDARD OF REVIEW

"A judge of the court shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

Under *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed on an ineffective assistance of counsel claim, a defendant must show (1) deficient performance, such that counsel's representation fell below an objective standard of reasonableness and (2) resulting prejudice, such that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-88, 694.

### A. Thauberger's counsel was not ineffective in informing Thauberger of the immigration consequences of his guilty plea.

In the instant case, Thauberger and Valenti testified at the hearing before the magistrate judge. (R&R 5; Mot. Vacate Hr'g Tr. 15:25, 78:15, DN 132). Valenti testified that he had several conversations with Thauberger about the potential effect of a plea agreement on Thauberger's immigration status and that Thauberger expressed concern about that issue. (R&R 8; Hr'g Tr. 81:4-6, DN 132). Valenti inquired whether Thauberger had access to an immigration law attorney.

3

(Hr'g Tr. 81:8). Thauberger told Valenti that an immigration attorney, Andrew Cumming, was assisting him with a matter related to his Green Card. (Hr'g Tr. 81:9-10). Valenti reached out to Cumming, who responded to him with the following email:

> What normally happens is we advise on the immigration consequences of any planned plea agreement – to determine if it will result in the loss of the Green Card. This area of the law is complicated, and these charges look serious (problematic). Sometimes the immigration consequences can be used as leverage to get a plea agreement that does not result in the loss of the Green Card (and deportation). Note – if [Thauberger] is going to do serious time – he may want to get deported and serve that time in Canada to reduce the time served.

(R&R 6). In a subsequent phone call, Cumming told Valenti that Thauberger's charges were "very serious" and "would possibly subject Thauberger to deportation and the loss of his green card." (R&R 8; Hr'g Tr. 81:18-82:3, DN 132). Valenti testified that he relayed this information to Thauberger. (Hr'g Tr. 81:25-82:1). Valenti also stated that Thauberger told him that Cumming would advise him "with respect to his immigration status" from that point forward. (Hr'g Tr. 82:1-3).

Upon receiving the final plea agreement, Valenti testified that he met with Thauberger and discussed it at length. (Hr'g Tr. 86:12-15). Valenti testified that himself, Steve Pence (Thauberger's former attorney), and Thauberger went over the plea agreement at length and specifically discussed the immigration consequences of the plea agreement. (R&R 8-9; Hr'g Tr. 86:16-89:6, DN 132). According to Valenti, Thauberger relayed to them that Cumming told Thauberger that his charges "could result in deportation." (R&R 9; Hr'g Tr. 88:18). Valenti also testified: "There was no doubt in my mind that Dr. Thauberger understood that this plea could have serious consequences, up to and including deportation. There was no doubt in my mind that he understood that, based upon our discussion . . . ." (Hr'g Tr. 106:11-15).

4

Thauberger also testified at the hearing before the Magistrate Judge, but the Magistrate Judge found Thauberger's testimony not credible for seven enumerated reasons. (R&R 16). Two of those reasons include:

> 4. When reading Paragraph 5 of the Plea Agreement aloud at the request of counsel for the United States at the evidentiary hearing, Thauberger hesitated to read the portion of the paragraph stating that "Defendant agrees to plead guilty with the full understanding this plea may lead to adverse immigration consequences . . . ." Additionally, he refrained from reading the final lines of that Paragraph and had to be prompted by counsel to add "including possible removal from the United States."
>
> 5. Thauberger's reluctance to admit during the evidentiary hearing that he told the District Judge that he read the plea agreement, even in the face of a certified transcript by a stenographer.[2]

(R&R 16). In alleging ineffective assistance of counsel based on counsel's purported "incorrect" advice regarding the immigration consequences of his guilty plea, Thauberger's entire argument is that counsel never stated that, by pleading guilty to his charges, Thauberger would be subject to "mandatory" deportation or that his deportation was "guaranteed," which is what Thauberger perceives the law as guaranteeing.

The Sixth Circuit dealt with this exact issue in *Maiyo v. United States*, 576 F. App'x 567 (6th Cir. 2014), finding no deficient performance on the part of counsel. *Id*. at 569-71. In *Maiyo*, the defendant, Maiyo, was charged with and pleaded guilty to one count of possession of a falsely made Social Security card, in violation of 18 U.S.C. § 1546(a). *Id*. at 568. Maiyo later collaterally attacked his conviction, "claim[ing] that his lawyer incorrectly advised him that deportation was merely a 'possibility' following his conviction, rather than, as he claimed in his motion to vacate, being 'virtually assured.'" *Id*. at 568-69.

---

[2] When showed the transcript, Thauberger evasively testified, "I mean, that's what the stenographer put," implying that the stenographer's transcript was incorrect without explicitly disagreeing that he told the Court he read the plea agreement. (R&R 16).

5

While Maiyo's conviction triggered 8 U.S.C. § 1227(a)(3)(B)(iii) and Thauberger's conviction triggered 8 U.S.C. § 1227(a)(2)(A)(iii), the language of those statutes at the time of both Maiyo and Thauberger's convictions are the same. Subsection (a)(3)(B)(iii), the subsection applicable to Maiyo, provides that "[a]ny alien who at any time has been convicted . . . of a violation of . . . section 1546 of Title 18 . . . is deportable." Subsection (a)(2)(A)(iii), the subsection applicable to Thauberger, states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

In finding that Maiyo failed to meet the deficiency prong, the Sixth Court began by stating the rule from the seminal case articulating what immigration-consequences advice counsel must give to a defendant pleading guilty to criminal charges, *Padilla v. Kentucky*, 559 U.S. 356 (2010), that "counsel must inform her client whether his plea carries a risk of deportation." *Maiyo*, 576 F. App'x at 570 (quoting *Padilla*, 559 U.S. at 374). In applying this rule, the Sixth Court found that counsel's advice to Maiyo, that he faced a "possibility" of deportation, was not deficient and noted that "[n]othing [Maiyo's] attorney said or did not say ran afoul of the requirement of *Padilla* that an attorney advise a client 'whether his plea carries a *risk* of deportation.' Maiyo's counsel did just that. She informed Maiyo that he could be deported as a result of a guilty plea." *Maiyo*, 576 F. App'x at 570 (emphasis added) (quoting *Padilla*, 559 U.S. at 374). In other words, as long as counsel advises the client that pleading guilty carries a risk of deportation, not that deportation is "assured," counsel's performance cannot be deemed deficient.

This rule is supported by the Sixth Circuit's decision in *Rodriguez-Penton v. United States*, 905 F.3d 481, 487 (6th Cir. 2018). In that case, the Sixth Circuit explained that "[c]ounsel has an obligation to 'advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.' This obligation is not met if counsel either *fails to mention the risk*

6

*of deportation or specifically discounts such a risk*. *Id*. at 487 (emphasis added) (internal citation omitted) (citation omitted). Here, both Valenti and Cummings, as well as the plea agreement itself, advised Thauberger of the risk of deportation. Additionally, there is no credible evidence that anyone specifically discounted the risk of deportation akin to what counsel did in *Padilla* and *Lee*.[3] Thauberger therefore fails to meet the deficiency prong necessary to establish ineffective assistance of counsel.

Even if Thauberger had satisfied the deficiency prong of *Strickland*, he has also failed to meet the prejudice prong. The Sixth Circuit in *Haddad v. United States*, 486 F. App'x 517 (6th Cir. 2012), outlined the prejudice prong analysis in the context of counsel's advice regarding the immigration consequences of pleading guilty to criminal charges:

> To establish prejudice, [a defendant] "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." This "is never an easy task." *Strickland* imposes a "high bar" that "must be applied with scrupulous care lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Moreover, "[h]indsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial. . . .
>
> [A defendant] therefore cannot establish prejudice merely by stating now that he would have gone to trial then if he had been told that his plea would authorize the government to deport him. "The test is objective, not subjective": to prevail, "'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" This in turn requires a "prediction of the likely outcome at trial." In many cases, "this inquiry will be dispositive."

*Id*. at 520-21 (internal quotation marks omitted) (internal citations omitted) (citation omitted).

---

[3] Although counsel stating that deportation is a possibility versus stating that it is assured could technically be characterized as "discounting the risk of deportation," *Padilla* and *Lee* suggest an affirmative act from counsel, akin to telling a client not to worry about the immigration consequences, is needed to constitute a "discounting of the risk" satisfying the deficiency prong of *Strickland*. Moreover, unless deportation proceedings have commenced, it is a bold assertion to make that pleading guilty to a felony results in *assured* deportation—deportation may never actually occur for a variety of reasons.

In this case, Thauberger makes no effort to address his case's "likely outcome at trial" in any of his objections, and, as such, fails to meet the prejudice prong standard outlined in *Haddad*. In addition to failing to meet the deficiency prong of *Strickland*, Thauberger has failed to satisfy the prejudice prong and cannot maintain a claim of ineffective assistance of counsel on this basis.

B.  **Thauberger's counsel was not ineffective in not objecting to the use of the intended loss calculation in fixing Thauberger's sentence.**

In his *pro se* filings, but unaddressed by his counsel, Thauberger briefly argues ineffective assistance of counsel for counsel's failure to object to the Court's use of the "intended loss" figure that increased his base offense level by ten points under the U.S. Sentencing Guidelines Manual. The Magistrate Judge, however, aptly addressed this contention.

Section 2B1.1(b)(1)(F)-(G) of the U.S. Sentencing Guidelines Manual instructs judges to increase a defendant's base offense level by ten if the amount of financial loss in a fraud case is more than $150,000 but less than $250,000. Courts are also instructed to consider "the greater of actual loss or intended loss" in applying this rule. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. 3(A). "Intended Loss" means "the pecuniary harm that the defendant purposely sought to inflict" including "intended pecuniary harm that would have been impossible or unlikely to occur." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. 3(A)(ii). "In a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, *i.e.*, is evidence sufficient to establish the amount of the intended loss, if not rebutted." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. 3(F)(viii).

In support of the United States' articulation of total intended loss in Thauberger's health care fraud case, the United States "submitted the face-values of the invoices [Thauberger]

8

submitted to the various insurance companies." (Def.'s Mem. Supp. Mot. Vacate 1, DN 112). Thauberger argues that this number should not have been used to determining his base offense level because he only actually received somewhere between 40 to 70% of the total invoice amounts. (Def.'s Mem. Supp. Mot. Vacate 10). Thauberger contends that the Court should not have used the figure presented by the United States representing intended loss and instead should have used the actual loss figure, even though the U.S. Sentencing Guidelines Manual instructs courts to use the greater of the two. Thauberger's theory fails because he would essentially have his attorney argue that the use of an intended loss figure in determining a defendant's sentence is fundamentally unfair, an assertion rejected by the U.S. Sentencing Guidelines Manual. *See Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist." (citations omitted)). Thauberger's ineffective assistance of counsel argument in this regard fails.

### C.     A Certificate of Appealability is unwarranted.

Finally, Thauberger is not entitled to a certificate of appealability. A prisoner who seeks to appeal the dismissal of his motion to vacate must satisfy the requirements of 28 U.S.C. § 2253(c), which provides that a certificate of appealability will be issued only if the applicant has made a substantial showing of a denial of a constitutional right. *United States v. Fisher*, 3:13-CR-000158-GNS-DW, 2017 WL 2681662, at *3 (W.D. Ky. June 21, 2017) (citing 28 U.S.C. § 2253(c)(2)). This showing is made when a prisoner establishes that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right. *Id.* (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No jurist of reason would find it debatable whether Thauberger's motion fails to state a valid claim in this instance, and a certificate of appealability will therefore be denied.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 149) is **ADOPTED** and Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (DN 85) is **DENIED**.

2. Defendant's Objections (DN 153, 155, 156, 157, 158) are **OVERRULED**.

3. Defendant is **DENIED** a certificate of appealability.

Greg N. Stivers, Chief Judge
United States District Court

November 4, 2019

cc: counsel of record
Devin Thauberger